E-FILED
Wednesday, 01 April, 2026  03:14:33 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

|  |  |
|---|---|
| OXFORD HOUSE, INC.; NICHOLAS MADRIGAL; TRAVIS GOUGH; JARED GALDE; TARA HELLICKSON; MICHAEL HELLICKSON; TANNER JUSTICE; LAUREN JUSTICE; RICHARD ODORFER; ALEXANDER HALENKA; LAYLA HALENKA; GRAHAM REID; and AMY AVES, <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF PEORIA, <br><br> *Defendant*. | Case No. 1:23-cv-1406-JEH-RLH |

## ORDER & OPINION

This Fair Housing Act case is well into its second year. The plaintiffs are Oxford House, Inc.—a non-profit that provides homes for people recovering from substance abuse disorder—and the landlords who own them. They accuse the City of Peoria of using zoning restrictions to drive them out. Discovery is well underway. The parties now dispute whether Oxford House properly invoked the attorney-client privilege when it withheld sixty-eight documents in response to the City's requests. The City has moved to compel disclosure. Oxford House's assertions of privilege fail, so the City's motion will be granted.

## BACKGROUND

The current dispute arises from a privilege log Oxford House served in response to the City's requests for production in September 2025. That log identified

sixty-eight communications among Oxford House's legal counsel and its employees that were being withheld on the basis of privilege. (Doc. 44 at 1.) It identified thirty documents as a "[d]irect communication[s] between an attorney and client about a legal matter." (*See* Doc. 44-1 at 1–16.) And it identified the other thirty-eight as "communication[s] between Landlords and Oxford House Staff regarding a legal matter in which both parties have a common legal interest." (*See* Doc. 44-1 at 1–14.) The City disputes the second category.[1]

A brief comment on the structure of Oxford House's operation. Oxford House is a non-profit corporation based in Maryland. (Doc. 25 at 3.) It operates 4,000 houses across the United States, nearly 100 in Illinois, and seven in Peoria. (Doc. 25 at 7.) But Oxford House does not own the homes; it partners with third-party landlords. (Doc. 25 at 7–10.) Oxford House leases homes from the landlords and operates them as substance-free housing for people recovering from addiction. (Doc. 25 at 9.)

Not all Peoria residents embraced Oxford House's mission. And when some of them complained, the City began issuing zoning citations. (Doc. 25 at 14.) The landlords received those notices and forwarded them to Oxford House employees responsible for the Peoria area—Zachary George and A.J. Dunaway. (Doc. 47 at 4.) George and Dunaway would then forward them to Oxford House's general counsel. (Doc. 47 at 4.) Many of the communications identified on Oxford House's privilege log were sent directly to or from Oxford House's general counsel. (*See, e.g.*, Doc. 44-1 at

---

[1] As far as the Court can tell, the City's Motion to Compel does not dispute this first category. Nor could it. If an Oxford House employee communicated directly with its general counsel regarding a legal matter, that would of course be privileged.

4.) The rest were exchanged among other Oxford House employees—none of them lawyers—coordinating a response to the City's citations. (*See, e.g.*, Doc. 44-1 at 1.)

## LEGAL STANDARD

This case presents a federal question, so federal privilege law applies. *See* Fed. R. Evid. 501. The attorney-client privilege protects communications made in confidence by a client to an attorney for the purpose of securing legal advice. *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). The "in confidence" part is important here. It means that a client-to-lawyer communication made in the presence of a third person enjoys no privilege—it is not made "in confidence." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). But there is an exception. The "common interest doctrine" allows otherwise privileged communications to be "shared between parties having a 'common legal interest' without a resultant waiver." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014).

## DISCUSSION

Oxford House invoked the common-interest doctrine to withhold thirty-eight documents. The City objects. It argues that the doctrine is not an independent privilege; it is a rule of non-waiver. It thus has no purchase when the underlying communications are not privileged to begin with. Because no lawyer was a party to the communications, the City argues, the doctrine does not apply. In response, Oxford House argues that those communications *are* privileged—even though no lawyer was a party to them—because they were sent or received by the lawyers' *agents*. Those agents, the argument goes, facilitated an implied attorney-client relationship

3

between Oxford House's general counsel and the landlords. And because all parties shared a common legal interest—resisting the City's zoning actions—the doctrine applies.

## I.     No Attorney-Client Relationship Existed Between the Landlords and Oxford House's General Counsel

The landlords relayed information to Oxford house that ultimately landed on the desk of its general counsel. Oxford House argues that this flow of information created an implied attorney-client relationship. But the landlords' role did not make them clients—it made them messengers. Even assuming the landlords believed that Oxford House's counsel served as their attorneys, the belief was unreasonable. Because no attorney-client relationship existed, no privilege attached, and the common-interest doctrine does not prevent waiver of a privilege that never existed.

The attorney-client privilege attaches only to communications between lawyer and client. *See Sandra T.E.*, 600 F.3d at 618; *see also United Nat'l Recs., Inc. v. MCA, Inc.*, 106 F.R.D. 39, 40 (N.D. Ill. 1985) (quoting *In re Walsh*, 623 F.2d 489, 493 (7th Cir. 1980)). Oxford House's theory thus requires an attorney-client relationship between its general counsel and the landlords. But Oxford House has a problem: The landlords are not Oxford House employees, nor did they ever retain its lawyers to represent them. Recognizing this, Oxford  House seeks to fill the gap by implication. It argues that the landlords "relied" on Oxford House's general counsel, "deferred" to their judgment in resolving the zoning issues with the City, and "sought updates and guidance regarding those matters" through other Oxford House employees. (Doc. 47 at 9.) The Court disagrees.

An implied attorney-client relationship requires a party to show that they (1) submitted confidential information to a lawyer, and (2) reasonably believed that the lawyer was acting as their attorney. *Hernandez v. Guevara*, No. 23-cv-15375, 2025 WL 3507339, at *2 (N.D. Ill. Oct. 28, 2025). Oxford House cannot satisfy the first element: The landlords did not send the zoning notices to a lawyer; they sent them to Oxford House's non-lawyer employees. Oxford House retorts that those employees were "agents" of its general counsel. But it identifies no case finding an implied attorney-client relationship when the client has never spoken with the attorney directly. In *Black Rush Mining, LLC v. Black Panther Mining*—a case on which Oxford House relies—the court found no implied attorney-client privilege, even where one party to the communication *was* a lawyer. 840 F. Supp. 2d 1085, 1090 (N.D. Ill. 2012). The party asserting the privilege never (1) independently sought legal advice from the lawyer, (2) received legal advice, (3) exercised control over the lawyer's work, or (4) paid the lawyer. *See id.* Because the court found that no indicia of a traditional attorney-client relationship were present, it refused to find one by implication.

Oxford House cannot overcome *Black Rush Mining*. It cannot show that the landlords sought or received legal advice from Oxford House's general counsel, that they exercised control over the general counsel, or that they paid them.[2] Instead, the

---

[2] Oxford House appears to overstate the relationship between Oxford House's general counsel and the landlords: "The landlords . . . sought updates and guidance . . . through George and Dunaway, who acted as intermediaries between the landlords and the legal team." (Doc. 47 at 9.) But at the deposition of Zachary George, an Oxford House employee, the City's council asked whether Mr. George "provide[d] the landlords with any advice or information on how to deal with the notices of violation." (Doc. 47-3 at 2.) Mr. George responded: "Advice, no. I just communicated to the landlords . . . it's been sent to legal." (Doc. 47-3 at 2.) This underscores that no exchange of legal advice occurred between Oxford House's general counsel and the landlords. Instead, the landlords would forward the notices to

5

landlords forwarded notices to Oxford House employees and generally relied on its legal team to resolve the zoning issues. (Doc. 47 at 9.) But forwarding notices to Oxford House employees, who in turn sent them up the chain of command, is not enough. *See Domanus v. Lewicki*, No. 08 C 4922, 2012 WL 6568227, at *5 (N.D. Ill. Dec. 14, 2012) ("[A]n implied attorney-client relationship exists only if the client's subjective beliefs are reasonable."). Oxford House operates 4,000 homes across the country and—as far as the Court can tell—employs two lawyers in its general counsel's office. Taken to its logical conclusion, Oxford House's argument would mean that two lawyers at its Maryland headquarters have attorney-client relationships with every landlord across the country who communicates with an Oxford House employee about a legal matter. Hundreds of communications would thus be cloaked with the attorney-client privilege—even if the landlords had never spoken with (or, indeed, could not even name) Oxford House's attorneys.

The lack of communication between the landlords and Oxford House's general counsel thus defeats its assertions of privilege. And that is so regardless whether the employees with whom the landlords *did* communicate were acting as "agents" for its general counsel. The mere fact that an employee reports to or communicates with a company's general counsel does not make that employee the general counsel's agent. *See United States v. Chi. Baseball Holdings, LLC*, No. 22 CV 3639, 2024 WL 6988883, at *8 (N.D. Ill. Mar. 1, 2024) (refusing to find principal-agent relationship between general counsel and company employee simply because the employee sent a report to

---

employees (like Mr. George), who assured the landlords that the legal department would assume responsibility for resolving the issues with the City.

the general counsel). Even so, the argument would still fail because it simply relocates the fundamental flaw: the absence of an attorney-client relationship. Indeed, communications with a lawyer's agent are protected only if the client and the lawyer have a fiduciary relationship. *See Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007). The landlords and Oxford House's general counsel did not.

Another case on which Oxford House relies—*United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)—illustrates the point. There, the court found that the attorney-client privilege attached to communications between the criminal defendant and an accountant hired to assist his lawyer. *See id.* at 244. The critical difference between that case and this one is that the *Schwimmer* defendant had a pre-existing relationship with his lawyer. His communications with his lawyer's agent were thus privileged—much the same way his communications with his lawyer would have been. But here the landlords had no client-lawyer relationship with Oxford House's general counsel. It follows that the landlords' communication with other Oxford House employees (agents or not) is not privileged.

The landlords' role appears to be less "client" and more "messenger." They received notices at their properties and forwarded them to Oxford House's counsel—through non-lawyer intermediaries—with the understanding that counsel would handle the legal issues. *See  Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 568 (N.D. Ill. 2007) (finding no privilege where "non-attorney [told] another non-attorney to get information that was requested by an attorney"); *see also Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 896

7

(N.D. Ill. 2018) ("[S]imply copying a lawyer on an otherwise non-privileged communication or turning it over to one's lawyer will not transform the non-privileged document into a privileged one."). That detached role as messenger bears no resemblance to a true client-lawyer relationship. It thus cannot form the basis of an implied one. *See Black Rush Mining*, 840 F. Supp. 2d at 1090.

Oxford House must show that the landlords reasonably believed that—by sending information to Oxford House employees—they were engaging in privileged client-to-lawyer communications. *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 180 (N.D. Ill. 2018) It has not. And because the communications at issue were not privileged to begin with, the common-interest doctrine cannot supply an independent justification to withhold them. *Miller*, 17 F. Supp. 3d at 731.

## II. Oxford House's Privilege Log Contains Enough Detail to Assess the Validity of Its Objections

The final question is whether Oxford House's privilege log "describe[s] the nature of the documents" withheld "in a manner that . . . enable[s] other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

The answer is yes. The information that matters is who sent and received each communication. If an attorney sent or received the communication (and it related to legal advice), then it is privileged. Oxford House withheld thirty documents on precisely this basis. By contrast, Oxford House is not entitled to withhold communications between the landlords and Oxford House employees based on an implied client-lawyer relationship or the common-interest doctrine. Because the landlords were not "clients" of Oxford House's general counsel, the content of those

communications is beside the point—no privilege attached to them regardless. Absent an alternative source of privilege, Oxford House must disclose those documents.

### CONCLUSION

IT IS THEREFORE ORDERED that the City's Motion to Compel, (Doc. 44), is GRANTED. Oxford House must produce all communications between the landlords and its employees that it has withheld based on the common interest doctrine. That said, if Oxford House's general counsel was the author of the communication or a direct recipient (and it related to the provision of legal advice), Oxford House need not disclose it. Likewise, internal communications between Oxford House's employees and its general counsel related to the provision of legal advice need not be disclosed.

*So ordered.*

Entered this 1st day of April 2026.

s/ Ronald L. Hanna
Ronald L. Hanna
United States Magistrate Judge

9